IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>SAMANTHA ROBICHAUD, )<br>)<br>Plaintiff-Intervenor, )<br>)<br>vs. )<br>)<br>RPH MANAGEMENT, INC., )<br>d/b/a McDONALDS, )<br>)<br>Defendant. ) | CIVIL ACTION NO.: 03-RRA-0502-W |

**<u>Memorandum of Opinion</u>**
(Re: Defendant's Motion for Fees and Expenses, ct. doc. 60)

## I.  INTRODUCTION

This is a civil action filed, on March 6, 2003, by the Equal Employment Opportunity Commission ("EEOC") against RPH Management, Inc. ("RPH"). In its Complaint the EEOC alleged that RPH violated the Americans with Disabilities Act ("ADA") by failing to promote and by discharging Samantha A. Robichaud, because of her disability. On June 12, 2003, the Court allowed Ms. Robichaud to intervene in the case. On April 24, 2003, RPH filed a Motion to Dismiss claiming, *inter alia* that the EEOC had failed to engage in good faith conciliation of the charge of discrimination prior to filing suit. On April 28, 2004, the undersigned issued a Report and Recommendation in which he recommended that the Defendant's motion to dismiss the EEOC's complaint be granted. On August 11, 2004, the District Court adopted the Report and

Recommendation and ordered that the EEOC's complaint would be dismissed with prejudice.[1] The case was then returned to the undersigned for further proceedings.

This case is now before the Court on the Defendant's Motion for Fees and Expenses. (Doc. 60). For the reasons stated herein, the Defendant's motion will be **DENIED**.

## II. ANALYSIS

The Defendant bases its right to attorneys fees and expenses on two grounds. First, the Defendant claims it is entitled to the fee as set out by statute in 42 U.S.C. § 2000e-5(k). Secondly, the Defendants contend the award should be made as a sanction pursuant to 28 U.S.C. § 1927 and Fed. R. Civ. P. 11. The Court will address these grounds in turn.

### A. The Attorney's Fee Provision in Title VII

Title VII provides that

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 2000e-5(k).

The Supreme Court, interpreting this section, has stated:

> [A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.
>
> In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest

---

[1] The Intervenor's complaint was not dismissed at that time.

> one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421-422 (1978).

### 1.      Whether the Defendant Was a Prevailing Party

The EEOC correctly points out that in order for an award of attorneys fees to be made, it must first be shown that the Defendant is a "prevailing party". The EEOC cites cases for the proposition that, under these circumstances, the Defendant is not a prevailing party. However, it seems the Eleventh circuit has addressed this issue to the contrary in the case of *Equal Employment Opportunity Commission v. Asplundh Tree Expert Company*, 340 F.3d 1256 (11th Cir. 2003).

In *Asplundh*, the Eleventh Circuit held that the sanction of dismissal and awarding of attorneys' fees against the EEOC was proper where it was held that the EEOC failed to fulfill its statutory duty to act in good faith to achieve conciliation. In particular, the court wrote:

> As we said above, conciliation is at the heart of Title VII. In its haste to file the instant lawsuit, with lurid, perhaps newsworthy, allegations, the EEOC failed to fulfill its statutory duty to act in good faith to achieve conciliation, effect voluntary compliance, and to reserve judicial action as a last resort. Under these circumstances, the sanction of dismissal, awarding attorneys' fees, is not an unreasonable remedy or an abuse of the district court's discretion. *See EEOC v. Pierce Packing Co.,* 669 F.2d 605, 608 (9th Cir.1982) (affirming dismissal of EEOC's action and awarding attorneys' fees to defendant where EEOC acted unreasonably failing to engage in conciliation and filing suit). *See also Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir.2001) ("The key to unlocking a court's inherent power [to award sanctions] is a finding of bad faith") (citing *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998)).

*E.E.O.C. v. Asplundh Tree Expert Co.,* 340 F.3d 1256, 1261 (11th Cir. 2003). What is notable about

the Eleventh Circuit's holding is its citation to the Ninth Circuit case of *EEOC v. Pierce Packing Co.,* 669 F.2d 605, 608 (9th Cir.1982) as a basis for its reasoning.

While the Eleventh Circuit does not particularly spell out the means to which it reaches the ends of granting attorneys fees in *Asplundh*, the *Pierce* case, which it cites to approvingly, does so. In *Pierce*, a case similar factually to the instant case, the Court wrote:

> The Commission's enabling act specifically provides for the award of fees and costs to the prevailing party in a Title VII action. 42 U.S.C. s 2000e-5(k). The award is subject to the qualified discretion of the trial court. "In sum, a district court may in its discretion award attorneys fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."Christianburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The district court found that: "These procedural and regulatory defects committed by the EEOC were clearly cognizable at an early stage in this litigation's history. The EEOC's obvious disregard for such promulgated regulations is the apex of unreasonableness." There is adequate support in the record to uphold this finding.

*Equal Employment Opportunity Commission v. Pierce Packing Co.*, 669 F.2d 605, 609 (9th Cir. 1982). The *Pierce* Court wrote this language in affirming a District Court's dismissal of an EEOC complaint and awarding of attorneys' fees against the EEOC for failure of the EEOC to properly conciliate a claim before filing suit. Thus, the *Pierce* Court determined that the Defendant in this context was a "prevailing party". In citing the *Pierce* case approvingly, the Eleventh Circuit has essentially held that, in cases such as the instant case, the Defendant is a "prevailing party" under 42 U.S.C. § 2000e-5(k).

### 2. Was the Action Frivolous, Unreasonable, or Without Foundation

Having determined that the Defendant was a prevailing party, the Court must next determine whether the action was "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 421-422 (1978).

4

The Defendants cite *Asplundh* and contend this case is based upon similar facts. The Court in *Asplundh*, summarized the facts as follows:

> In August of 1996, Lewis filed his charge of discrimination, alleging disparate pay, racial harassment and retaliation. The charge specifically stated that Lewis was subjected to racial harassment "from Pete Evens (sic), GRU Inspector." Additionally, the charge alleged that Lewis was "subjected to different terms and conditions of employment than my White co-workers (Blacks were paid lower than Whites and denied pay increases)." Lewis acknowledged in the charge that he was informed that his lay-off was due to a "lack of work." He further asserted that "no reason was given for Evens' (sic) harassment or the different terms and conditions of employment [pay disparity]."
>
> The EEOC, through Investigator West, commenced an investigation of the allegations. This investigation continued for thirty-two months. Throughout the investigation, which focused on the disparate pay issue, Asplundh cooperated with the EEOC.
>
> On March 31, 1999, the Commission issued a "Letter of Determination" finding "reasonable cause to believe the charge is true" on the harassment and retaliation allegations. No additional facts constituting harassment or retaliation were cited; nor did the Commission find any cause to believe that there was any discrimination by Asplundh in pay.
>
> On April 7, 1999, West sent a document titled "Conciliation Agreement" to Asplundh's General Counsel, Phillip Tatoian, in Philadelphia, Pennsylvania, requiring a response by April 23. This deadline provided 12 business days within which Asplundh was required to respond regarding the Gainesville, Florida incident. The proposal sought, *inter alia,* both reinstatement and front pay (despite the termination of the project on which Lewis had worked and the closure of the Gainesville office in 1996). It would also have required Asplundh to provide nationwide notice to its employees of Lewis' allegations and to conduct, within ninety days, nationwide anti-discrimination training of all its management and hourly employees. The proposal did not identify the EEOC's theory of Asplundh's liability for GRU employee Evan's alleged racial harassment of Lewis.
>
> General Counsel Tatoian promptly retained a local Gainesville, Florida law firm to investigate the Florida incident and Asplundh's potential liability and respond to the EEOC. On April 28, 1999, Peter Sampo, a partner in that firm, forwarded by facsimile the following correspondence to EEOC Investigator West:
>
>> The firm has been retained to represent the Respondent in the above-

> referenced matter. Your letter to General Counsel, Phillip Tatoian, dated April 7, 1999 and enclosing a proposed Conciliation Agreement has been forwarded to me for response. In order for me to provide informed advice to my client about this issue, I would like to arrange a phone call with you to discuss this case and attempt to understand the Commission's basis for its determination. Therefore, I ask that you extend the time for responding to the proposed Conciliation Agreement until we have had an opportunity to review this matter and you and I have had an opportunity to discuss the issues.

The EEOC did not respond to Sampo's letter that day or even acknowledge having received it. Instead, the next day, on April 29, 1999, the EEOC sent another letter to Tatoian in Philadelphia, declaring that "the Commission has not received ⋯ a reply to the conciliation proposal," that "efforts to conciliate this charge ⋯ were unsuccessful," and that "further conciliation efforts would be futile or non-productive."

Tatoian notified Sampo of this letter. Sampo attempted to contact West by telephone, but was unable to reach her, leaving her a message. On May 10, 1999, eleven days after receipt of Sampo's letter, West left a message on Sampo's office voice mail stating that the "case was out of [her] hands" and that Sampo should "contact the Regional Attorney." Two days later, on May 12, 1999, the EEOC filed this lawsuit.

*E.E.O.C. v. Asplundh Tree Expert Co.,* 340 F.3d 1256, 1257 -1259 (11th Cir. 2003).

The Eleventh Circuit, in agreeing that sanctions of dismissal and attorneys fees were appropriate wrote:

> In this case, the EEOC conducted an investigation of Lewis' allegations for almost three years before issuing its Letter of Determination, finding cause to believe that Asplundh had violated Title VII. During this extended period of time, Asplundh did not apprehend that this local incident, not involving its employee, would result in charges, so it did not retain local Gainesville counsel to investigate the allegations.
>
> Then, in a flurry of activity, the EEOC issued a Letter of Determination, followed one week later by a proposed, nation-wide Conciliation Agreement, which provided twelve business days for Asplundh's General Counsel in Philadelphia to accept the agreement, submit a counter proposal to the EEOC or inform the EEOC that no agreement would be entered into. In neither of these communications did the EEOC identify any theory on which Asplundh could be held liable for the alleged conduct of Evans, the City of Gainesville, Florida's employee.

>Upon receipt of the Letter of Determination, Asplundh promptly retained local counsel to investigate the allegations, who responded to the proposed Conciliation Agreement by requesting a reasonable extension of time within which to "understand the Commission's basis for its determination" and to adequately prepare a response. This faxed communication was not immediately acknowledged. Instead, the very next day the Commission sent another letter to Asplundh, again in Philadelphia, terminating conciliation and announcing its intent to sue. This action was filed thirteen days later.
>
>Under these circumstances, it cannot be said that the EEOC acted in good faith. In fact, its conduct smacks more of coercion than of conciliation." *See EEOC v. Pet, Inc., Funsten Nut Div.,* 612 F.2d 1001, 1002 (5th Cir.1980). Despite the extended period of investigation, it appears that, once the EEOC decided it was ready to move forward, it would tolerate no "dallying" by Asplundh. Not even if Asplundh was given only one week between notice that, after almost three years, the Commission found "good cause" to believe it had violated Title VII, and its receipt of the Commission's conciliation "proposal." Not even if this proposal, which included no theory of liability, demanded a remedy that was on the one hand, national in scope, and on the other, impossible to perform (no reinstatement or front pay being available as the Gainesville Asplundh project had ended three years earlier). Not even if the Commission had received a letter evidencing Asplundh's clear intent to resolve the matter outside the courtroom, prior to notifying Asplundh that conciliation had been "unsuccessful." As we have said before, such an "all or nothing" approach on the part of a government agency, one of whose most essential functions is to attempt conciliation with the private party, will not do. *Id.*

*E.E.O.C. v. Asplundh Tree Expert Co.*, 340 F.3d 1256, 1259 -1260 (11th Cir. 2003).

The case before this court does not "smack of coercion," as was the case in *Asplundh*. While it is true that the Court found that the EEOC did not engage in good-faith conciliation, that fact alone does not require a finding that attorney's fees should be awarded. The facts of each case must be examined. There is a difference in the conduct here and that described in *Asplundh*. In contrast to *Asplundh*, there is no evidence in this case that untoward pressure was exerted upon the Defendants to settle the case on the EEOC's terms. To the contrary, the present Defendants actually made an offer to the EEOC which the EEOC presented to Robichaud. Robichaud, however, roundly rejected the offer, stating that the offer was tantamount to being kicked in the face, and that she felt that

7

McDonald's was not making a real attempt to settle the case. The EEOC then decided there was no point in further settlement talks. Also, there is no evidence of further contact from the Defendant after the EEOC told the Defendant that it would make no further attempts at conciliation. Notably, the EEOC did not file suit until March of 2003, a year and a half after its September 30, 2001,notice that no further attempts at conciliation would be made. Such a period of time does not indicate a rush to file as was the case in *Asplundh*.

Simply put, this is a case not of coercion but more of negligence or lack of due diligence on the part of the EEOC to engage in the traditional "back and forth" aspect of negotiations. The EEOC subjectively failed to recognize that a low settlement offer could be merely a starting point for an experienced negotiator and that the bottom line offer of settlement might have been substantially higher. Rather, the EEOC took the Defendants' initial offer seriously, or at least considered it so unreasonable as to make further talks a waste of time, especially in light of Robichaud's expression of contempt for the Defendants' offer.

Wherefore, it is concluded that the EEOC's filing of this action does not rise to the level of being "frivolous, unreasonable, or without foundation," and, therefore, the court will decline to exercise its discretion to award attorney's fees.

       **B.**    **Sanctions Under 28 U.S.C. § 1927 and Fed. R. Civ. P. 11.**

28 U.S.C. § 1927 provides for sanctions where a person "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. Rule 11 protects parties from harassing, delaying and costly pleadings and defenses and those pleadings and defenses which are knowingly filed without merit. As is noted above, on June 12, 2003, the Court allowed Ms. Robichaud to intervene in the case. Whether the EEOC was a party to the action or not, the case would have

proceeded. Indeed, the case did in fact proceed with Ms. Robichaud after the EEOC was dismissed.

## III. RECOMMENDATION

After careful review of the facts of this case, the evidence does not suggest that either sanction is warranted. Wherefore, the Defendants' Motion for Fees and Expenses will be denied.

DONE this 2nd day of September, 2005.

_____
ROBERT R. ARMSTRONG, JR.
UNITED STATES MAGISTRATE JUDGE